**THOMAS K. GODFREY**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**2601 Second Avenue North**
**Suite 3200**
**Billings, MT 59101**
**Phone: (406) 657-6101**
**FAX: (406) 657-6989**
**E-mail: Thomas.Godfrey@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**LOUIS CHRISTOPHER IKEDA,**<br><br>**Defendant.** | **CR 26-43-BLG-SPW**<br><br>**GOVERNMENT'S SENTENCING MEMORANDUM** |

The United States, represented by Assistant U.S. Attorney Thomas K. Godfrey, files the following regarding the sentencing hearing set in this case on August 19, 2026.

**INTRODUCTION**

The Defendant pled guilty to Use of Facility in Interstate Commerce in Aid

of Racketeering, in violation of 18 U.S.C. § 1952(a)(3). The PSR calculates the defendant's guideline range as 18 to 24 months. The United States recommends the Court impose a guideline sentence of 24 months to be followed by supervised release.

**OBJECTIONS**

There is one defense objection that affects the guideline sentencing range. The defendant objects to the application of 2G1.1 in determining the base offense level pursuant to 2E1.2(a)(2).

For 2E1.2 the base offense level is either (1) 6 or (2) the "offense level applicable to the underlying crime of violence or other unlawful activity in respect to which the travel or transportation was undertaken." USSG § 2E1.2(a). As the PSR notes the underlying unlawful activity is promoting prostitution, i.e. a commercial sex act, which under these facts has a base offense level of 14. USSG § 2G1.1(a)(2).

The definition of a "commercial sex act" is "any sex act, on account of which anything of value is given or received by any person." 18 U.S.C. § 1591(e)(3). Here, the defendant reduced the surety required to post bond for an inmate in exchange for sex. PSR ¶¶ 6-12. That is exactly a commercial sex act. The offense level applicable to the underlying unlawful activity is 14 and the PSR's calculation is correct.

## ARGUMENT

### A. The Offense

In November and December 2024, Ikeda was a licensed surety producer and bail bond agent employed with Northwest Bail Bonds in Billings, Montana. During that time, he used the Yellowstone County Detention Facility's ("YCDF") inmate communication system to converse with several female inmates including via text message and video. An individual that is out-of-custody must use an internet connected device to utilize the application to communicate with an inmate.

Typically, a licensed bond agent requires an inmate pay 10% of the bail amount as a premium for the agent to post bond and secure the inmate's release. The minimum premium amount a bond agent is allowed to accept is controlled by the terms of their contract with their surety company and as authorized under Montana state laws and regulations. Ikeda knew that Northwest Bail Bonds paid its surety company a total of 3% of any bail amount posted.

In November 2024, Jane Doe was incarcerated at YCDF on several criminal cases pending before the State of Montana's Thirteenth Judicial District Court. To be released from custody on those matters, Jane Doe was required, in pertinent part, to post $10,000.00 bail.

On November 18, 2024, Ikeda initiated a text message conversation with

Jane Doe that continued over the course of the following weeks. Their conversation quickly turned sexual, including whenever Jane Doe would bring up the topic of her bail. After initially telling Jane Doe that he could not post her bond because it would be illegal, Ikeda later began discussing different amounts he would accept as payment. These discussions would typically be interjected with sexually explicit messages. Ultimately, Ikeda told Jane Doe he would accept $300 (the amount Northwest Bail Bond would owe its surety company) to post her bail. The conversation then turned sexual in anticipation of her release.

On December 2, 2024, Ikeda posted bail for Jane Doe. After the two left YCDF, Ikeda drove Jane Doe to an area by the river in Billings and they had sexual intercourse. Jane Doe later described feeling pressured into having sex with Ikeda because whenever she talked about being released from jail, he would respond by expressing his desire to have sex with her. She also believed the sexual relationship was in exchange for Ikeda accepting a reduced amount to post bond for her release. Jane Doe reported that after she was released from custody, Ikeda instructed her that if anyone asked about their relationship, she should say it was strictly professional.

In total, Ikeda accepted $200 from a third party to post bond for Jane Doe's $10,000 bail. However, Ikeda deposited a total of $300 in Northwest Bail Bonds' accounts used to pay its surety. He later admitted he used his own money to make

up the difference.

Subsequent to posting Jane Doe's bond, Ikeda messaged two other female inmates at YCDF. He discussed bail with both inmates and both conversations quickly turned sexual. Ultimately, he posted bond for both inmates for less than the required minimum premium amount. Both women later reported they believed a sexual relationship with Ikeda was expected in exchange for his posting their bond, but both were able to evade him after their respective releases from YCDF.

**B. Criminal History and Background**

The defendant is a criminal history category of I. His previous criminal convictions are listed from paragraphs 30 to 33 of the PSR.

**C. Sentence Recommendation**

Title 18 U.S.C. § 3553(a)(2) requires the Court to "impose a sentence sufficient, but not greater than necessary" to comply with the following purposes: (1) to reflect the seriousness of the offense; (2) to promote respect for the law; (3) to provide just punishment; (4) to afford adequate deterrence to criminal conduct; (5) to protect the public from further crimes of the Defendant; and (6) to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The Court is also required to consider the nature and circumstances of the offense and the history and characteristics of the Defendant, the kinds of sentences

available, the sentencing guidelines and policy statements, to avoid unwarranted sentencing disparities, and to provide for restitution to victims. 18 U.S.C. § 3553(a)(1), (3)-(7).

The defendant's conduct in this case is serious. The defendant was leveraging his position as a licensed surety and bail bond agent to entice female inmates to engage in sexual acts with him in order to get out of custody. The victim felt that she had to have sex with the defendant in order to get the reduced bond of $300 and it is clear from the defendant's messages to the victim that she was right about that. The defendant then used the $200 provided by the victim's friend and made up the $100 difference with his own money with his company. People in custody are often desperate to get out, and the defendant used that desperation and his victim's poverty in order to obtain sex from her.

He further breached the trust of the court system which relies on bail bond agents to be professional and to treat defendants in custody equally and not to abuse their positions like in this case. The court that set the bond to assure the victim's appearance at further court appearances would undoubtably be horrified to learn that the bond order of the court was being exploited in order to prey upon the victim for sex. Defendants should not be subject to this conduct, especially from actors who are part of the court system.

The defendant was preying upon a vulnerable population and using his

position to do so. Given the seriousness of his conduct a high-end guideline sentence is warranted in this case. The United States respectfully requests that the Court impose a guideline sentence of 24 months to be followed by supervised release.

DATED this 5th day of August, 2026.

MARK STEGER SMITH
Acting United States Attorney

*/s/ Thomas K. Godfrey*
THOMAS K. GODFREY
Assistant U.S. Attorney